SAMUEL H. FLOYD *v.* LOUIS H. ARKY.

[42 South. Rep., 569.]

1. CONTRACTS. *Construction. Separate writings. Entire or severable.*
Whether two or more written instruments constitute one and the
same contract must be determined by the facts of the case.

2. SAME. *Concrete case.*
A written agreement for the sale of a stock of merchandise, to be
consummated on agreed terms at a future day, and a lease for a
term of years of a storehouse in which the goods were located,
beginning on the day fixed for the delivery of the goods, executed
at the same time by the seller to the buyer, examined and ad-
judged to evidence but one contract and not to be severable.

FROM the chancery court of Lauderdale county.

HON. JAMES L. McCASKILL, Chancellor.

Arky, the appellee, was complainant in the court below.
Floyd, the appellant, was defendant there. From a decree
overruling defendant's demurrer to complainant's bill the de-
fendant appealed to the supreme court.

Appellant and appellee entered into a contract by the terms
of which appellee was to sell to appellant his stock of merchan-
dise and lease to appellant his storehouse, in which the stock
of merchandise was located, for a term of years. The contract
provided that appellee might sell goods in the regular course
of business between the date of the contract and January
15, 1906, the date agreed upon for delivery to appellant, and
that appellant would take all'goods remaining in stock on the
last-named date at the net cost price as shown by the original
invoices, and that the storehouse should be delivered to appel-
lant on January 15, 1906; that appellant should pay for the
goods partly in cash, and the balance of the purchase money
to be represented by promissory notes, secured by certain

stocks. The contract provided that appellant should take the store fixtures at a price to be agreed upon, and it further provided that the storehouse should be leased to appellant for a term of years beginning January 15, 1906, and stipulated the annual rental and manner of the payment of same. It further provided that, in event of destruction or damage to the building, it should be rebuilt or repaired for appellant's use. By the terms of the contract all parties thereto deposited a forfeit to guaranty the performance of same. When the time arrived for delivery of possession of the storehouse and stock of goods, appellee made an inventory of the goods and fixtures, being governed as to price by the original invoices, except in a few instances, where the invoices had been lost. Appellant took no part in making the inventory, nor did he express a desire to do so. On the date agreed upon appellee informed appellant that he was ready to deliver the goods and fixtures and building, and to receive his cash payment and notes for deferred payments as provided in the contract. Appellant demanded possession and the keys of the store, together with an inventory of the stock on hand, and appellee then demanded the cash payment and the execution of the notes, and stated that, in case the inventory was unsatisfactory, a new inventory could be made. Appellant demanded unconditional surrender of both the storehouse and stock of goods, contending that the contract was a severable one, and that in case the stock of goods did not prove satisfactory, and that should he decide not to consummate his purchase of the same, it was still his purpose to retain possession of the storehouse, which he would claim irrespective of a repudiation of part of the contract by a refusal to take the stock of goods. Appellee declined this proposition and filed his bill in chancery for specific performance, setting out the above facts, as well as his readiness to perform his portion of the contract.

*Miller & Baskin,* and *S. A. Witherspoon,* for appellant.

This is an action of *assumpsit,* brought in the chancery court to recover the purchase price of personal property, although disguised as a suit to enforce specific performance of a contract.

But if this suit be regarded as a bill to enforce specific performance of a contract, then it cannot be maintained, for the reasons pointed out, that there is a plain and adequate remedy at law; that the contract is too vague and uncertain to be specifically enforced; that the appellee has not specifically complied with the contract; that it provides for the repairing, remodeling and rebuilding of the storehouse, and that its specific enforcement would be burdensome to the court.

If a court of equity has no jurisdiction to enforce the specific performance of an agreement to pay the purchase price, even when the vendee has received the chattels, it certainly has no jurisdiction to do less than enforce payment by decreeing the execution of notes and security for the price, when the vendor holds on to the goods. This rule is well settled, and there is no conflict among the authorities on the subject. We invite the attention of the court to a few of the authorities: 26 Am. & Eng. Ency. Law, 17, 19; 3 Pomeroy (1st ed.), 441; *Lining* v. *Geddis,* 16 Am. Dec., 608; *Jones* v. *Mill Corporation,* 16 Am. Dec., 358 to 364; *Cobules* v. *Whitman,* 25 Am. Dec., 61; *Jones* v. *Newehall,* 15 Am. Rep., 97; *Fall's appeal,* 36 Am. Rep., 671; *Rector* v. *Wood,* 41 Am. Rep., 860; *Scott* v. *Billgery,* 40 Miss., 119; *Bomer Bros.* v. *Canady,* 79 Miss., 232; *Witty* v. *Jacobs,* 40 L. R. A., 99.

Our position is that the appellant had a right to inspect and examine the goods before he paid any part of the price, and that he had a right to rescind the sale if the goods tendered were not the goods bought, and that in case of a recision of the sale, he had a right to enforce the lease, because the contract was severable and divisible, and that the conduct of the

appellee in refusing to permit the appellant to examine and inspect the goods unless he would first pay $10,000 and agree to give up his lease if he did not take the goods, was a violation of the contract, which debars him of the right to specifically enforce the same.

"Delivery is not complete until inspection and acceptance in accordance with the contract, unless such inspection is waived." 24 Am. & Eng. Ency. Law (2d ed.), 1082.

This doctrine is supported by the following cases: *Bowles* v. *Brown,* 73 Miss., 297; *Pullman Co.* v. *Metropolitan R'y. Co.,* 175 U. S.; *Thorne* v. *Vanzinger,* 50 Ill. App., 306; *Smith* v. *Baker,* 153 Ind., 322; *Midland Elevator Co.* v. *Cleary,* 77 M. App., 298; *McClure* v. *Jefferson,* 85 Wis., 208.

It is perfectly plain that if it be possible to incorporate two separate, distinct and independent contracts in one instrument, it has been done in this case. It would be exceedingly difficult to conceive of any two contracts that might be embodied in the same instrument that would be as disconnected and independent in every particular as the two under consideration.

We find the following definition of entire and divisible contracts in 7 Am. & Eng. Ency. Law, 95:

"4. *Entire and divisible contracts.*—A contract is entire when by its terms, nature and purposes it contemplates and intends that each and all of its parts, material provisions and the consideration are common each to the other and interdependent. Where the contract expressly apportions the price to each item to be performed, or where it embraces several undertakings, each supported by a distinct consideration, the contract is severable."

These definitions of entire and divisible contracts are supported by the citation of a great number of authorities, and are a correct statement of the law on that subject. *Wooten* v. *Walters,* 14 S. E. Rep., 734; *Badger* v. *Tipton,* 26 Am. Dec.,

611; *Dugan* v. *Anderson,* 11 Am. Rep., 512; *Spear et al.* v. *Snyder,* 13 N. E. Rep., 910; *Coleman* v. *Insurance Co.,* 34 Am. St. Rep., 565; *Barton* v. *Home Insurance Co.,* 97 Am. Dec., 329; *Fulmer* v. *Poust,* 35 Am. St. Rep., 881; *Broxton* v. *Nelson,* 68 Am. St. Rep., 98 (26 Am. & Eng. Ency. Law 32); *Ruff* v. *Shepard,* 58 Mo., 242; *Mayer* v. *McCreary,* 119 N. Y., 434; *Bomer Bros.* v. *Canady,* 79 Miss., 237.

J. M. McBeath, H. R. Stone, J. Q. Hall, Hall & Jacobson, for appellee.

Whether or not there is a legal remedy is not the question. The question is, does a remedy exist at law which is full, adequate and unembarrased? *Richardson* v. *Brooks,* 52 Miss., 118; *Williamson* v. *Neely,* 69 L. R. A., 232.

"The adequate remedy at law which will deprive a court of equity of jurisdiction must be a remedy as certain, complete and efficient to attain the ends of justice as the remedy in equity." *Williams* v. *Neely,* 69 L. R. A., 232.

Judge LUCAS, in *Bumgardner* v. *Leavett,* 12 L. R. A., 780, quoting approvingly from *May* v. *LeClare,* 78 U. S., 218, says: "In order to oust the equity jurisdiction, the remedy at law must be as effectual and complete as the chancellor can make it."

Counsel in argument assume, contrary to the facts, that the remedy invoked is alone to enforce payment of the purchase price of chattels. They further assume as a well-established principle that courts of equity will not entertain bills for the performance of contracts involving the sale of personal property.

The test at last is the adequacy or inadequacy of the legal remedy. *Rothholz* v. *Schwartz,* 19 Am. St. Rep., 409; *Bumgardner* v. *Leavett,* 12 L. R. A., 776; *Brown* v. *Norman,* 65 Miss., 369; (26 Am. & Eng. Ency. Law, 103; 20 Ency. Pl. & Pr., 400; 4 Pom. Eq. Jur. [3d ed.], 1401).

The court in *Bomer Bros.* v *Canady,* 79 Miss., 233, recognized the jurisdiction of equity in bills for the specific delivery up of chattels, other than those cases in which a *praelium affectionis* attaches to them, and so recognizing, proceeded to a consideration of the question, to-wit: whether the chancery court should be required to unduly tax its powers in the specific enforcement of a complicated and uncertain contract, involving the exercise of powers unusual and extraordinary, if not impracticable of execution. And that, too, was a case in which the chancellor, for the very reasons assigned by this court, to-wit: "The undue taxation of the superintendence of the court," had declined to assume jurisdiction.

Still another reason for invoking the jurisdiction of the equity court is afforded by the fact that the appellee has a statutory lien on personal property for the purchase money thereof, and the enforcement thereof is of exclusive equitable cognizance. 5 Pom. Eq. Jur. (3d ed.), sec. 10. And that is so though the statute may have provided another remedy. 1 Pom. Eq. Jur. (3d ed.), 279, note.

We are confronted with the fact that the chancellor has assumed the enforcement of the contract, and even though it might be true that this court would affirm his action had he declined to do so, still, the court having undoubted jurisdiction and the only question being the advisability of its exercise, the constitutional mandate is that the chancellor's conclusion in that regard must prevail. Constitution 1890, sec. 147.

Another ground of equity jurisdiction is the avoidance of a multiplicity of suits. 1 Pom. Eq. Jur. (3d ed.), 181; 6 *Ib.,* 642; *Tisdale* v. *Insurance Co.,* 84 Miss., 709; *Thomas* v. *Mangum,* 40 South. Rep., 327.

The principle is well settled that when the court takes jurisdiction for any purpose it will then maintain its jurisdiction for all purposes and administer full relief, and determine all questions involved. 26 Am. & Eng. Ency. Law, 15; *Thames*

v. *Mangum,* 40 South. Rep., 327; *Railroad Co.* v. *Brooks,* 66 Miss., 583; *Learned* v. *Holmes,* 49 Miss., 290.

Many authorities are adduced in support of Floyd's right to inspect, being instances of sales by sample, and the inquiry being whether the goods offered were of same quality as the samples.

The all-sufficient answer to the argument in that regard is that the bill alleges that Floyd had ample opportunity to inspect and did make inspection of the entire stock before agreeing to purchase; further, that Floyd was accorded ample opportunity on January 15th to reinspect and to verify the inventory and to make a new inventory; and that complainant offered to make a good and sufficient indemnifying bond for Floyd's protection; and the court's attention is called to the further fact that the deferred payments would also accord him further protection. All these facts are admitted by the demurrer.

The negotiations between appellant and appellee were of several months' duration, and such negotiations contemplated the acquisition of complainant's mercantile business, as a whole, consisting of the stock and stock fixtures, and the store and store fixtures, they constituting what is popularly termed the "plant," the business sought to be acquired. The price offered for the stock of goods was greater than its real value, disassociated from the business itself; and the reason for offering so large a price for the stock was that such price would be influential in inducing Arky to give up so valuable a "stand." Arky would not part with his storehouse without at the same time selling the stock, nor would Floyd for one moment have entertained the thought of purchasing the stock at the price named, disconnected from the "stand," or storehouse.

In *Johnson* v. *Stone,* 69 Miss., 826, Johnson purchased from Stone his plantation and farming implements and stock thereon. A conveyance of the land was executed, and a trust deed to

secure the installments of purchase money. A separate price was placed upon the stock and farm implements, and a separate deed of trust executed to secure the payment of such price. It was stipulated that possession of both the real and the personal property should be given on January 1, 1891.

The view taken by this court was that the sale of both the personalty and realty should be treated as one transaction, though evidenced by different instruments, and the consideration evidenced by separate notes and secured differently; and that the enforcement or recission must be of the whole.

In other words, it was an agricultural "plant," and the things sold, the land, the farming implements and the live stock, were component parts of, and went to make up this one entire thing.

So Arky was disposing of his mercantile business—his mercantile "plant"—consisting of the stock of merchandise, the fixtures and the "stand." It took the whole to constitute the thing sought by Floyd, and which Arky agreed to let him have.

Clark on Contracts, 675, says: "The contract may be entire or severable, according to the circumstances of each peculiar case. . . . and the criterion is to be found in the question whether the whole quantity—all of the things as a whole—is of the essence of the contract. If it appears that the purpose was to take the whole or none, then the contract would be entire; otherwise it would be severable. . . . On the whole, the weight of opinion and the more reasonable rule would seem to be that, when there is a purchase of different articles, at different prices, at the same time, the contract would be severable as to each article, unless the taking of the whole was rendered essential either by the nature of the subject-matter or by the act of the parties. This rule makes the interpretation of the contract depend on the intention of the parties as manifested by the facts and by the circumstances of each

---

---

particular case. And though this was said in reference to con-
tracts of sale, the reason applies to all other contracts as well."

Argued orally by *G. Q. Hall,* for appellee.

WHITFIELD, C. J., delivered the opinion of the court.

Whether or not two instruments are parts of one and the
same transaction must, of necessity, be determined by the pecu-
liar facts of each particular case. On the facts in this case
it is perfectly clear that the instruments providing for the
sale of the goods, etc., and the lease of the storehouse, both
executed on the same date, are parts of one and the same trans-
action. The decision of this proposition practically settles the
case.

It is only necessary to notice one other contention of learned
counsel for appellant, and that is the right of appellant to in-
spect and examine the stock of goods, on the date when appellee
offered to surrender the goods in the storehouse. Appellee avers
in his supplementary bill that he delivered the keys to appel-
lant, or his counsel, and that he offered to let him inspect and
examine the goods, and also offered to assist him in so doing,
but that appellant said, in answer to a query, that, if the pos-
session of the storehouse should be surrendered to him then
and there, as appellee offered to surrender it, and he (appel-
lant), upon inspection and examination of the goods, should
not be satisfied, then he would not redeliver possession of the
storehouse to appellant, because he deemed the two instruments
separate and independent transactions. In this attitude of the
matter, appellee did all he was required to do with respect
to the inspection and examination of the goods at the time and
place stated.

*Affirmed, and the cause remanded, with leave to answer
within thirty days after filing of mandate in the court below.*